B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

**PLAINTIFFS**
Joseph Braunstein, Chapter 7 Trustee of
Logistics Information Systems, Inc.

**DEFENDANTS**
William E. Sperbeck

**ATTORNEYS** (Firm Name, Address, and Telephone No.)
Mark W. Corner, Esq.
Riemer & Braunstein LLP
Three Center Plaza
Boston, MA 02108     (617) 523-9000

**ATTORNEYS** (If Known)

**PARTY** (Check One Box Only)
☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin
☒ Creditor      ☐ Other
☐ Trustee

**PARTY** (Check One Box Only)
☒ Debtor        ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor      ☐ Other
☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Action to block discharge pursuant to 11 U.S.C. Section 727(a)(2) and to determine
non-dischargeability of debt pursuant to 11 U.S.C. Section 523(a)(2)(A).

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation,
    actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
    (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court
    if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>**William E. Sperbeck** | BANKRUPTCY CASE NO.<br>**10-14888-JNF** | |
| DISTRICT IN WHICH CASE IS PENDING<br>**Massachusetts** | DIVISION OFFICE<br>**Eastern** | NAME OF JUDGE<br>**Feeney, J.** |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>8/5/10 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>**Mark W. Corner, Esq.** | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>WILLIAM E. SPERBECK<br><br>          Debtor.<br><br>---<br><br>JOSEPH BRAUNSTEIN, CHAPTER 7<br>TRUSTEE OF LOGISTICS<br>INFORMATION SYSTEMS, INC.<br><br>          Plaintiff<br>v.<br><br>WILLIAM E. SPERBECK<br><br>          Defendant | Case No. 10- 14888 (JNF)<br><br>Chapter 7<br><br><br><br><br>Adversary Proceeding No. |

## COMPLAINT

### INTRODUCTORY STATEMENT

In this Adversary Proceeding, Joseph Braunstein, Chapter 7 Trustee of Logistics

Information Systems, Inc. and Arclogix, Inc. - consolidated debtors and a creditor of the Debtor,

William E. Sperbeck - objects to the Debtor's discharge pursuant to 11 U.S.C. §727(a)(2)

Additionally, the Plaintiff seeks a determination that a judgment obtained against the Debtor in

excess of $700,000.00, is non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A).

### PARTIES AND JURISDICTION

1.      The Plaintiff Joseph Braunstein is the Chapter 7 Trustee of Logistics Information

Systems, Inc. ("LIS") in Chapter 7 No. 03-10886.

2.      Pursuant to a Memorandum of Decision dated March 18, 2009 and judgment

entering thereafter, Arclogix, Inc. ("Arclogix") was substantively consolidated with LIS, and

became a consolidated Debtor with LIS in Chapter 7 No. 03-10886.

3.     The Defendant William E. Sperbeck is an individual residing at 20 Saunders Terrace, Wellesley, Massachusetts, and is the Debtor in the above-captioned bankruptcy.

4.     The Plaintiff, as a creditor of Sperbeck, has standing to object to the granting of discharge pursuant to 11 U.S.C. §727(c)(1).

5.     The Plaintiff has standing to request that his judgment against Sperbeck is to be excepted from discharge pursuant 11 U.S.C §523(c)(1).

6.     This action is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I) and (J).

## STATEMENT OF FACTS

7.     On or about February 4, 2003, Logistics Information Systems, Inc. ("LIS") filed for relief under Chapter 7, and Jonathan Yellin was appointed Chapter 7 Trustee.

8.     On or about April 8, 2003, Yellin filed a "Verified Expedited Motion of Jonathan Yellin, Trustee Against the Debtor, the Debtor's Successor and Fraudulent Transferee Arclogix, Inc. and Debtors Principal William E. Sperbeck, to Turn Over the Assets and Books and Records of the Debtor; for Substantive Consolidation of Arclogix, Inc. as a Debtor in These Proceedings; and for Injunctive Relief" (the "Substantive Consolidation Motion").

9.     Arclogix, Inc. ("Arclogix") was a corporation owned and controlled by Sperbeck, which was alleged to be a successor to the business of LIS.

10.    Sperbeck was an officer, director, shareholder and employer of both LIS and Arclogix.

11.    On or about February 12, 2004, Yellin resigned as Chapter 7, Trustee, and the Plaintiff was appointed successor Chapter 7 Trustee.

12.    On or about June 8, 2004, the Plaintiff filed an adversary proceeding against Sperbeck, among others, entitled <u>Joseph Braunstein, Chapter 7 Trustee of Logistics Information</u>

Systems, Inc. v. William E. Sperbeck et al., Adversary Proceeding No. 04-1188 (the "Adversary Proceeding").

13.    The Adversary Proceeding and the Substantive Consolidation Motion were consolidated for trial and tried in October, 2008.

14.    After trial, the Court (Rosenthal, U.S.B.J.) made findings and rulings, and enter judgment against Sperbeck in the amount of approximately $700,000.00.  See Memorandum of Decision, attached as Exhibit A, and Order, attached as Exhibit B.

15.    Among the findings made by the Court at the trial were that Sperbeck fraudulently transferred assets from LIS to himself, and then to Arclogix, a corporation of which he was an officer, director and shareholder and that such transfers were fraudulent under G.L. c.109A, §5, that Arclogix was to be substantively consolidated with LIS, and that consequently the assets of Arclogix constituted assets of LIS' estate.

16.    Sperbeck appealed from the Bankruptcy Court's judgment on or about April 23, 2009, following which the United States District Court for the District of Massachusetts. (O'Toole, U.S.D.J.) affirmed the Bankruptcy Court's judgment on appeal by judgment dated April 1, 2010.

17.    On or about May 11, 2009, shortly after the Bankruptcy Court's Judgment against him, Sperbeck formed EcoTranslogix, Inc. ("ETL"), a Massachusetts corporation of which Sperbeck was an officer, director, shareholder and employee.

18.    Upon information and belief, Sperbeck transferred the active business of Arclogix, including certain contract rights, from Arclogix to ETL.

19.    Upon information and belief, Kimball International, Inc. ("Kimball") was a customer of LIS and then of Arclogix from 1996 until 2009.

3

20.     On or about December 21, 2009, ETL entered into a contract with Kimball pursuant to which it was to provide certain services under the same terms and conditions of LIS' 1996 contract with LIS, which was subsequently assumed by Arclogix.

21.     On or about December 21, 2009, ETL issued an invoice to Kimball, for services provided by Arclogix and/or under a contract between Kimball and Arclogix, which Kimball paid to ETL.

22.     Upon information and belief, Sperbeck caused ETL to pay the proceeds of the payment from Kimball to Sperbeck and to Silas Fyler, Sperbeck's partner at Arclogix and ETL, and a longtime associate of Sperbeck while Sperbeck operated LIS.

23.     Upon information and belief, ETL has many if not all of the same customers as Arclogix.

24.     Upon information and belief, Sperbeck has transferred asset of Arclogix, including contract rights of other customers of Arclogix, to ETL, as he did with Kimball.  The Trustee has sought to investigate the activities of ETL and Sperbeck, pursuant to Rule 2004 examinations authorized by the Court, but Sperbeck, acting on behalf of ETL, has failed to respond to the Rule 2004 subpoena and has otherwise interfered with the Trustee's investigation.

25.     The Plaintiff had had scheduled a sheriff's sale, in an effort to satisfy his judgment against Sperbeck, of Sperbeck's property located at 20 Saunders Terrace, Wellesley, to occur on May 6, 2010.

26.     Upon or about May 4, 2010, Sperbeck filed for relief under Chapter 7 under the Bankruptcy Code.

4

## COUNT I - TO OBJECT TO THE DEBTOR'S
## DISCHARGE PURSUANT TO 11 U.S.C. §727(A)(2)

27.     The Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1-26 of the Complaint.

28.     Sperbeck transferred assets of Arclogix, property of the estate of LIS, to ETL - a corporation of which Sperbeck is an officer, director, shareholder and employee, and as such an insider.

29.     Sperbeck transferred assets of Arclogix to ETL with intent to hinder, delay or defraud creditors, in particular the Trustee.

30.     Sperbeck's transfer of assets of Arclogix to ETL occurred within one year prior to Sperbeck's bankruptcy petition.

31.     Sperbeck's discharge should be denied pursuant to 11 U.S.C. §727(a)(2).

## COUNT II – FOR A DETERMINATIONOF NON-DISCHARGEABILITY
## AS TO PLAINTIFF'S JUDGMENT PURSUANT TO 11 U.S.C. §523(A)(2)(A)

32.     The Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1-31 of the Complaint.

33.     The Judgment in the Adversary Proceeding establishes a debt of Sperbeck to the Plaintiff for money and/or property obtained by false pretenses, a false representation or actual fraud.

34.     Sperbeck acted with intentional deceit and actual fraud in obtaining money or property from LIS, as determined by the Bankruptcy Court in the Judgment entered in the Adversary Proceeding.

35.     The Trustee's Judgment against Sperbeck is accepted from discharge, to the extent a discharge is granted by the Court, pursuant to 11 U.S.C. §523(a)(2)(A).

## PRAYERS FOR RELIEF

**WHEREFORE**, the Plaintiff, Joseph Braunstein, Chapter 7 Trustee of Logistics

Information Systems, Inc. prays for a judgment:

1.    That the Defendant William E. Sperbeck be denied his discharge pursuant to 11

U.S.C. §727(a)(2);

2.    That the Plaintiff's Judgment against Sperbeck in Adversary Proceeding 04-1188

be excepted from Sperbeck's discharge, to the extent a discharge is not denied by the Court,

pursuant to 11 U.S.C. §523(a)(2)(A).

3.    For such other and further relief as this Court may deem just and appropriate.

**Respectfully submitted this 5th day of August, 2010**

> JOSEPH BRAUNSTEIN, CHAPTER 7
> TRUSTEE OF LOGISTICS INFORMATION
> SYSTEMS, INC.
>
> By his Attorneys,
> RIEMER & BRAUNSTEIN LLP
>
>
> */s/Mark W. Corner* _____
> Mark W. Corner, BBO No. 550156
> Riemer & Braunstein LLP
> Three Center Plaza
> Boston, Massachusetts 02108
> (617) 523-9000
> mcorner@riemerlaw.com

1237765.1

6

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) | |
| LOGISTICS INFORMATION | ) | |
| SYSTEMS INC., | ) | |
|  | ) | |
| DEBTOR | ) | CHAPTER 7 |
| _____ | ) | CASE NO. 03-10886-JBR |
| JOSEPH BRAUNSTEIN | ) | |
| CHAPTER 7 TRUSTEE, | ) | |
|  | ) | |
| Plaintiff, | ) | |
| v. | ) | AP. NO. 04-1188 |
|  | ) | |
| WILLIAM E. SPERBECK, SUSAN | ) | |
| L. SPERBECK, & ARCLOGIX, INC., | ) | |
|  | ) | |
| Defendant | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION

This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District and is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). The Court is authorized to enter final judgment in this proceeding.

The following constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

In reaching its determination, the Court considered the demeanor and credibility of all witnesses who testified as well as the admitted exhibits and arguments and submissions of counsel.

It is appropriate to begin with a few words about credibility. The principal witness in this case was William E. Sperbeck. The Court found much of Mr. Sperbeck's testimony not convincing or credible. When convenient, Mr. Sperbeck claimed that he did not understand the

financial figures about which he was being questioned. When troublesome or inconsistent matters were raised during his testimony, his answer was often to blame an "error" on someone else. His explanations of certain activities, such as the formation of Arclogix and T Logic, were superficial and lacking in substance. When pressed for more detailed explanations of some of his answers, he often demonstrated a demeanor that the Court found suggestive of less than forthright answers.

The other witnesses appeared credible to the Court.

The Plaintiff filed a multi-count (10) complaint involving alleged fraudulent conveyances under state law, actions for turnover under bankruptcy law, declaratory judgment, successor liability, usurpation of corporate opportunity and assets, piercing the corporate veil, and reach and apply. The Plaintiff also filed a motion to substantively consolidate Arclogix with Logistics Information Systems ("LIS") in the main case, (Docket #18), which mirrors the counts for successor liability and piercing the corporate veil and is resolved by this decision. The Court accepts all facts agreed to in the Joint Pretrial Statement (Docket #79) and stipulated on the record as proved.

The facts are not materially in dispute. In fact, but for a few proposed findings and rulings presented by the parties, I can and do adopt the findings and rulings suggested by the parties, and enumerate those (with commentary) on Schedules A and B attached hereto.

There are some key facts and issues that require special and detailed comment by the Court.

### Fraudulent Conveyance

Were there creditors in existence as of the time of the repayment of loans to Sperbeck by LIS in late 2000 and early 2001? The simple answer to this question is yes. Although the bookkeeper, Ms. Cahoon, and the principal, Mr. Sperbeck, insisted that all "bills" and all

2

"creditors" were paid, APBLS, a known counterclaimant in a lawsuit, is the holder of a "claim" albeit unliquidated and perhaps disputed, and cannot be ignored in the analysis of this case. *See* M.G.L. ch. 109A, § 2.

All funds and assets were transferred (although several categories such as good will, intellectual property, and contracts were not transferred by appropriate documentation, the manner of their usurpation and use support finding that they were transferred). It appears that the Debtor, its successors, Arclogix, all shareholders, employees, principals, contracting parties, etc. treated the assets as transferred so the Court will as well. No assets were left in the Debtor, LIS, to satisfy the claim of APBLS.

Assets were transferred to Arclogix for the depreciated tax value, if any, on the Debtor's balance sheet, with no fair market value analysis undertaken. The formation of Arclogix and the transfer took place <u>after</u> the unsuccessful mediation of the APBLS lawsuit.

There was no evidence proferred of payment of "reasonably equivalent value," particularly of the assets <u>not</u> listed on the bill of sale as transferred.

The question as to whether the remaining assets were "unreasonably small" for operation of the business need not be answered, as no further business was to be conducted.

Although not paid for, it appears that the net book value of the computer software of LIS, as well as possibly some accounts receivable, were carried over to Arclogix balance sheet without compensation to LIS.

### <u>Actual "intent to hinder, delay, or defraud its creditors"</u>

The Court did not find the explanation of why the new entity (Arclogix) was formed very credible. Sperbeck's testimony that it was some unnamed attorney's suggestion that it should be done to give stock to employees sounds contrived, particularly in light of Sperbeck's admission that the APBLS claim was in his mind when he implemented his plans. (Transcript pp. 198-

3

199).  Moreover, there was no other evidence to corroborate his testimony of an unnamed attorney's advice.

The Court finds the notice of name change (Ex. 10) and the testimony with respect to the same (Transcript 1:61) and the notice to vendors (Ex. 21) and customers (various Exhibits such as C) compelling evidence of the intent to continue the LIS business under a new name and Arclogix so held itself out.  Coupled with the non-payment for any contracts or intellectual property, while the financial statements of the new enterprise absorbed on its asset side the development costs for software, the Court is satisfied that there was actual intent that Arclogix be the successor to LIS, and it was so treated by all involved (vendors, employees, accountants, and contracting parties) with one very crucial exclusion, APBLS.

## Piercing Corporate Veil/ Substantive Consolidation

Following the conclusion of the trial, the Trustee obtained permission to conform the complaint to the evidence at trial.  Pursuant to Count VII (against Arclogix for "successor liability"), and Count IX (against Sperbeck to "pierce the corporate veil of the Debtor"), the Trustee asserts that Arclogix is a mere continuation of the Debtor's business and that Sperbeck commingled "funds, assets and or management between [the Debtor] and Sperbeck" and used both the Debtor and  Arclogix to hide his assets.  Even though Count VII is styled as a successor liability count, the Trustee is really attempting either to pierce the corporate veil between Arclogix and the Debtor or substantively consolidate them with the Debtor; he is seeking a declaration that Arclogix's assets are the Debtor's assets.  These counts tie in with the Trustee's Motion for Substantive Consolidation (Docket #18 in the Chapter 7 case; 03-10886), which was tried along with the adversary proceeding.

4

### *Substantive consolidation versus piercing the corporate veil.*

Substantive consolidation is the emerging theory used by bankruptcy courts for collapsing two or more entities and/or their estates into one. It is based on federal law. Piercing the corporate veil is based on state law and bankruptcy courts are increasing moving away from it as a theory to collapse entities into a single unit. While piercing the corporate veil examines whether the entities are alter egos, substantive consolidation has additional considerations aimed at examining the harm and benefit to all creditors.

As the Trustee notes in his post-trial brief, bankruptcy courts have the power, under section 105 of the Bankruptcy Code, to substantively consolidate multiple entities, including debtor and non-debtor entities, even though the power is not expressly stated in the Bankruptcy Code.

> [T]he bankruptcy court had the power to enter the substantive consolidation order. [F]or many purposes, courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity. The bankruptcy court's power of substantive consolidation has been considered part of the bankruptcy court's general equitable powers since the passage of the Bankruptcy Act of 1898.

*In re Bonham*, 229 F.3d 750, 763 (9th Cir. 2000) (internal quotations and citations omitted); *see also Woburn Assoc. v. Kahn (In re Hemingway Transport, Inc.)*, 954 F.2d 1, 12 (1st Cir. 1992); *In re Dehon, Inc.*, 2004 WL 2181669 (Bankr. D. Mass. 2004). But the courts often use the term loosely, with some courts analogizing substantive consolidation to corporate mergers, *In re Parkway Calabasas, Ltd.*, 89 B.R. 832, 836 (Bankr. C.D. Cal. 1988), while others use the verbiage of and the factors for piercing the corporate veil. *See In re Circle Land & Cattle Corp.*, 213 B.R. 870, 874 (Bankr. D. Kan. 1997) (explaining that courts are replacing veil piercing with substantive consolidation). Substantive consolidation is often used to consolidate the *estates* of two or more debtors. *In re Snider Bros., Inc.*, 18 B.R. 230, 234 (Bankr. D. Mass. 1982)

(referring to the equitable power to consolidate "the *estates*"). It can be used to consolidate debtor and non-debtor entities, although often in the context of consolidating affiliated entities.

In *Dehon*, 2004 WL 2181669, *3-4, Judge Boroff explained

> Substantive consolidation, in effect, pools together the assets and liabilities of separate, yet related, entities, to form one estate in bankruptcy. Employing this tool, courts "pierce the corporate veil" in order to satisfy claims of the creditors of the consolidated entities from their common pool of assets. Large corporations, such as the Debtor, often use multi-tiered corporate structures, and substantive consolidation has been used to reach the assets and liabilities of a non-debtor subsidiary corporation.

> Different standards have been employed by courts to determine the appropriateness of substantive consolidation. In the First Circuit, bankruptcy courts remain unsettled as to what standard should be. One principle, however, remains constant: substantive consolidation should be approached with a concern for equitable treatment to all *creditors* involved. Notably, none of the tests weigh the interests of outside third parties. This is consistent with a core goal of the Bankruptcy Code to maximize the assets of debtors to satisfy their creditors' claims. (Internal citations omitted).

## *Standard for Substantive Consolidation*

The only pronouncement from the First Circuit regarding the standard to be used is found in *Hemingway Transport*, 954 F.2d at 12, that this Court quoted in *In re Century Electronics Mfg., Inc.*, 310 B.R. 485, 489 (Bankr. D. Mass.2004)[1]:

> Consolidation is permitted only if it is first established that the related debtors' assets and liabilities are so intertwined that it would be impossible, or financially prohibitive, to disentangle their affairs. The trustee may request consolidation to conserve for creditors the monies which otherwise would be expended in prolonged efforts to disentangle the related debtors' affairs. Nevertheless, the bankruptcy court must balance the potential benefits of consolidation against any potential harm to interested parties.

---

[1] The issue in *Century Electronics* was whether substantive consolidation should be given retroactive effect.

In *Century Electronics* this Court explained the test set out in *In re Auto-Train Corp., Inc.,* 810 F.2d 270, 276 (D.C.Cir.1987). That test has three parts, *all* of which must be met: (1) the proponent must show a substantial identity between the entities to be consolidated, *and* (2) the proponent must show that consolidation is necessary to avoid some harm or to realize some benefit, *and* (3) if a creditor objects and demonstrates that it relied on the separate credit of one of the entities and that it will be prejudiced by the consolidation, then the court may order consolidation only if it determines that the demonstrated benefits of consolidation "heavily" outweigh the harm.

## *Standard for Piercing the Corporate Veil*

In *In re Aoki*, Adv. Pro. 03-4164, docket # 48, this Court adopted the language and test for piercing the corporate veil under Massachusetts law. The decision was affirmed on appeal by the BAP. As the panel stated

> The Massachusetts Supreme Judicial Court has described two situations when piercing the corporate veil is appropriate: "(1) when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship, or (2) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." *My Bread Baking Co. v. Cumberland Farms, Inc.,* 353 Mass. 614, 233 N.E.2d 748, 752 (1968) (" *My Bread*").
>
> Adopting the *My Bread* standard, the Court of Appeals for the First Circuit set forth twelve factors to consider when deciding whether to pierce the corporate veil:
>
> (1) common ownership;
>
> (2) pervasive control;
>
> (3) confused intermingling of business activity, assets, or management;

7

(4) thin capitalization;

(5) nonobservance of corporate formalities;

(6) absence of corporate records;

(7) no payment of dividends;

(8) insolvency at the time of the litigated transaction;

(9) siphoning away of corporate assets by the dominant shareholders;

(10) nonfunctioning of officers and directors;

(11) use of the corporation for transactions of the dominant shareholders; and

(12) use of the corporation in promoting fraud.

*Pepsi-Cola*, 754 F.2d [10, 16 (1st Cir. 1985)]; *see also Evans v. Multicon Constr. Corp.*, 30 Mass. App. Ct. 728, 574 N.E.2d 395, 398 (1991) (applying the *Pepsi-Cola* factors); *The George Hyman Constr. Co. v. Gateman*, 16 F. Supp.2d 129, 151 (D. Mass. 1998) (same). Generally, in Massachusetts, *My Bread* sets the standard for deciding when to pierce the corporate veil, and *Pepsi-Cola* identifies a non-exclusive list of factors to be considered when engaging in a *My Bread* analysis. *See, e.g., Birbara v. Locke*, 99 F.3d 1233, 1238 (1st Cir. 1996). This analysis is also applicable in the bankruptcy context. *See MacDonald*, 114 B.R. [326, 331 (D. Mass. 1990)] (the equitable powers of the bankruptcy court enable them to apply the *My Bread* and *Pepsi-Cola* analysis to pierce the corporate veil in order to attribute a non-debtor corporation's assets or liabilities to the shareholders of the corporation) (citation omitted).

*In re Aoki*, 323 B.R. 803, 811 -12 (1st Cir. B.A.P. 2005).

Finally as the court in *In re Standard Brands Paint Co.*, 154 B.R. 563, 568-69 (Bankr. C.D. Cal. 1993), noted it is not uncommon or inappropriate to allow relief under both theories if the respective tests have been meet.

Sperbeck testified that there were no creditors of Arclogix. It would be extremely difficult and probably impossible to unravel the transfers made here, particularly since the contracts and software fraudulently usurped have "morphed" several times over in the years since the tainted transactions. As there are no creditors to be harmed, it seems to the Court that

8

the criteria for substantive consolidation of the Debtor and Arclogix effective as of March 18, 2009 is an appropriate remedy and it will be ordered.

### Susan Cahoon

With respect to the alleged liability of Susan Cahoon, the Court is not satisfied that Ms. Cahoon had any knowledge that there was an unpaid claimant or creditor. The Court cannot find any evidence upon which a finding of intent to delay, defraud, etc. can be based either directly or through inference. It is not even clear to the Court what, if anything, Cahoon knew of the Counterclaim that ultimately led to the judgment against LIS.

### Conclusion

Count I, judgment for the Plaintiff against Arclogix. *

Count II, judgment for the Plaintiff against Sperbeck in the amount of $254,163.50.

Count III, judgment for the Plaintiff against Sperbeck, and Sperbeck is ordered to turnover the sum of $254,163.50.

Count IV, judgment for the Plaintiff against Arclogix. *

Count V, judgment for the Plaintiff against Sperbeck in the amount of $424,499.

Count VI, judgment for the Plaintiff as follows: (1) Of the balance held in the Wellesley Bank Account, $95,000 is declared to be property of the bankruptcy estate of Logistics Information Systems, Inc., and (2) the Plaintiff may reach and apply the balance of the Wellesley Bank Account less $95,000, to satisfy Sperbeck's obligations under Counts II, III, and V.

Count VII, judgment for the Plaintiff against Arclogix. *

Count VIII, judgment for the Plaintiff against Sperbeck *, and judgment for the Defendant, Cahoon.

Count IX, judgment for the Defendant, Sperbeck.

Count X,  judgment for the Plaintiff against Sperbeck *, and judgment for the Defendant,

Cahoon.


* In lieu of a money judgment, the remedy for Counts I, IV, VII, VIII, and X is the substantive

consolidation of Logisitics Information Systems, Inc. and Arclogix, Inc.  A separate order will

issue in the main case granting the Trustee's Motion for Substantive Consolidation [Docket #18]

forthwith.

A separate order will issue.


March 18, 2009                                          By the Court,

                                                       Joel B. Rosenthal
                                                       United States Bankruptcy Judge

## Schedule A

Court's determination of "Defendants' Proposed Findings of Fact" (Docket # 121)

[* see commentary]

| Irrelevant | Adopt | Do not adopt |
|------------|-------|--------------|
| 41 | 1-4* | 9 * |
| | 5-7 | 11 * |
| | 8 * | 18 * |
| | 10 | 24 * |
| | 12 | 28-29 |
| | 13 * | 40 |
| | 14 * | |
| | 15 | |
| | 16 * | |
| | 17 * | |
| | 19 | |
| | 20 * | |
| | 21-23 | |
| | 25 * | |
| | 26 * | |
| | 27 * | |
| | 30 | |
| | 31* | |
| | 32-35 | |
| | 36 * | |
| | 37-39 | |

Commentary on Defendants' Proposed Findings of Fact

**1-4-** Defendant's background is in sharp contrast to his superficial answers.

**8, 25-** It is unclear from the record what Ms. Cahoon knew with respect to the claim of APBLS.

9, 11, 13, 14, 16- The record reflects that Sperbeck made loans and received re-payments from Logisitics. The Court is not satisfied that the original loans and opening balance thereof was ever proved. Clearly, a paper trail evidencing these "loans" was never established.

17, 18, 20- See Text. The court does not adopt the statement that "Logisitics had no other creditors" and "APBLS was not yet a creditors of Logisitics." Further, the issue of "profit" is not relevant in this context.

24 – The Court does not adopt the second and third sentences of this proposed finding.

26- The letter referred to, Exhibit 10, advised all vendors of a "name change." There was no evidence that APBLS was sent this letter.

27- The Court does not adopt the second sentence of this proposed finding.

31 – The differences between the software do not seem relevant to the Court. Further, the Court is not convinced of the necessity or logic of Arclogix's formation to accomplish Sperbeck's objectives.

36 – This proposed finding is only partially correct. See text of memo concerning assets transferred.

Court's determination of "Defendants' Proposed Rulings of Law" (Docket # 121)

[* see commentary]

| Irrelevant | Adopt | Do no Adopt |
|---|---|---|
| 11 | 1-8 | |
| | 9 * | |
| | 10 | |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 * | |
| | 16-18 | |
| | 19 * | |
| | 20 | |
| | 21 * | |

Commentary on Defendants' Proposed Rulings of Law

9- This list of "factors" is not exclusive.  The word "not" should appear before the words "was" and "reasonably" in #8.

15, 19, 21 – These lists of "factors" are not exclusive.

## Schedule B

Court's determination of "Plaintiff's Proposed Findings of Fact" (Docket # 124)

**[\* see commentary]**

| Irrelevant | Adopt | Do not Accept |
|---|---|---|
| | 1-25 | 29 |
| | 26 * | 30 |
| | 27-28 | 40 |
| | 31-39 | 48-49 |
| | 41-47 | 51 * |
| | 50 | |
| | 52-102 | |

## Commentary on Plaintiff's Proposed Findings of Fact

**26** – The record is not clear whether the payment was for anything other than assets listed on the check (Exs. 6 & 7).

**51** – It is unclear from the record whether any formal sale or transfer documents ever existed for some of the assets. See text of Memo.

Court's determination of "Plaintiff's Proposed Rulings of Law" (Docket # 124)

| Irrelevant | Adopt | Do not Accept |
|---|---|---|
| | 1 | 2 |
| | 3-10 | 11-13 |
| | 14-20 | |

**EXHIBIT B**

.

# UNITED STATES BANKRUPTCY COURT
## FOR THE
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |  |
|---|---|
| In Re: | |
| LOGISTICS INFORMATION SYSTEMS, INC., | Chapter 7 |
| Debtor | Case No. 03-10886-JBR |
| JOSEPH BRAUNSTEIN, CHAPTER 7 TRUSTEE OF LOGISTICS INFORMATION SYSTEMS, INC., | |
| Plaintiff | |
| v. | Adversary Proceeding Case Number: 04-1188-JBR |
| WILLIAM E. SPERBECK, SUSAN L. SPERBECK and ARCLOGIX, INC., | |
| Defendants | |

## ORDER

In accordance with the Memorandum of Decision issued on March 18, 2009 (Docket No. 127), as amended by Order dated April 9, 2009 (Docket No. 166), it is ORDERED that judgment, as amended, shall enter as follows:

Count I, judgment for the Plaintiff against Arclogix.*

Count II, judgment for the Plaintiff against Sperbeck in the amount of $254,163.50, with prejudgment interest of $23,179.67.

Count III, judgment for the Plaintiff against Sperbeck, and Sperbeck is ordered to turnover the sum of $254,163.50, with prejudgment interest of $23,179.67.

Count IV, judgment for the Plaintiff against Arclogix.*

Count V, judgment for the Plaintiff against Sperbeck in the amount of $424,499.

Count VI, judgment for the Plaintiff as follows: (1) of the balance held in the Wellesley Bank Account, $95,000 is declared to be property of the bankruptcy estate of Logistics Information Systems, Inc., and (2) the Plaintiff may reach and apply the balance of the Wellesley Bank Account less $95,000, to satisfy Sperbeck's obligations under Counts II, III and V.

Count VII, judgment for the Plaintiff against Arclogix.*

Count VIII, judgment for the Plaintiff against Sperbeck*, and judgment for the Defendant, Cahoon.

Count IX, judgment for the Defendant, Sperbeck.

Count X, judgment for the Plaintiff against Sperbeck*, and judgment for the Defendant, Cahoon.

All references herein are to the Plaintiff's Amended Complaint [Docket #112].

*In lieu of money judgment, the remedy for Counts I, IV, VII, VIII, and X is the substantive consolidation of Logistics Information Systems, Inc. and Arclogix, Inc. A separate order will issue in the main case granting the Trustee's Motion for Substantive Consolidation [Docket #18] forthwith.

DATED: April 13, 2009

By the Court,

Joel B. Rosenthal
United States Bankruptcy Judge

2